IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERRANCE RABON and
KATHLEEN RABON                                                                    PLAINTIFFS

v.                                    Case No. 4:16-cv-4007

JOHN K. KIMANI;
TOLYN EXPRESS, LLC; and
JOHN DOES 1-6                                                                      DEFENDANTS

SENRTY SELECT INSURANCE
CO.                                                                                INTERVENOR

**ORDER**

Before the Court is Defendants John K. Kimani and Tolyn Express, LLC's Motion to Limit Testimony of Habib Gennaoui, M.D. (ECF No. 38). Plaintiffs Terrance Rabon and Kathleen Rabon filed a response. (ECF No. 43). Intervenor Sentry Select Insurance Co. filed a response. (ECF No. 45). The Court finds the matter ripe for consideration.

**I. DISCUSSION**

This case arises from an automobile accident that occurred on October 26, 2013, at the Flying J Truck Stop in Texarkana, Arkansas. Plaintiff Terrance Rabon ("Mr. Rabon") alleges that he suffers from ongoing pain because of the accident, for which he underwent and is undergoing various forms of medical treatment, including an anterior cervical decompression and fusion surgery in April 2014. The parties do not contest liability in this matter, disputing only causation and damages.

At trial, Plaintiffs intend to offer the expert deposition testimony of Dr. Habib Gennaoui on the issue of causation. Defendants seek to limit Dr. Gennaoui's testimony in three respects. First, Defendants argue that the Court should exclude Dr. Gennaoui's causation opinions because

they are premised solely on the correlation between the automobile accident and the onset of Mr. Rabon's complaints of pain. Second, Defendants argue that the Court should prohibit Dr. Gennaoui from offering any opinions not stated to a reasonable degree of medical certainty. Third, Defendants argue that the Court should prohibit Dr. Gennaoui from testifying that another doctor diagnosed Mr. Rabon with myelomalacia,[1] as this testimony would constitute inadmissible hearsay.

The Court's starting point for analyzing expert testimony is the Federal Rules of Evidence, which provide in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed R. Evid. 702. In *Daubert*, the United States Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-93 (1993).

When assessing the reliability of expert testimony, *Daubert* suggests that the Court consider the following non-exhaustive factors: (1) whether the concept can and has been tested; (2) whether the concept has been subject to peer review; (3) what the known rate of error is; and (4) whether the concept is generally accepted by the relevant scientific community. *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995). The inquiry as to the reliability and relevance of the testimony is a flexible one designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same

---

[1] "Myelomalacia" refers to the softening of the spinal cord.

level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs, Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)). With this in mind, the Court will now address each of Defendants' arguments.

**A. Causation Opinions**

Defendants argues that the Court should exclude Dr. Gennaoui's causation opinions because they are premised solely on the correlation between the automobile accident and the onset of Mr. Rabon's complaints of pain. Defendants argue that Dr. Gennaoui's causation testimony is a *post hoc ergo prompter hoc* argument, "in which one event is asserted to be the cause of a later event simply by virtue of having happened earlier," and thus is insufficient to establish causation and should be rejected.

Plaintiffs argue that Dr. Gennaoui and other doctors at Dr. Gennaoui's clinic have served as Mr. Rabon's primary-care physicians for a number of years. Plaintiffs state that Dr. Gennaoui's causation opinion was based not only on onset, but also on Mr. Rabon's prior medical history, his examination and physical findings, and the results of radiographic studies. Plaintiffs state that Dr. Gennaoui testified that Mr. Rabon's reported symptoms of pain following the accident were inconsistent with his medical condition and level of functioning before the accident, as followed

by Dr. Gennaoui and his partners. Plaintiffs also argue that Defendants' retained expert testified that he also considers onset of symptoms in determining whether symptoms are the result of acute trauma or long-term degeneration.

Defendants correctly state that a *post hoc ergo propter hoc* argument is insufficient to establish causation. *See Bussman Mfg. Co. v. Nat'l Labor Rel. Bd.*, 111 F.2d 783, 787 (8th Cir. 1940). Defendants argue that Dr. Gennaoui's causation opinions are based solely on a *post hoc ergo propter hoc* argument because he identified the correlation of the accident and the onset of Mr. Rabon's complaints of pain as a basis for his causation opinion. Upon further questioning, Dr. Gennaoui stated that there was no other basis for his causation opinion. However, Dr. Gennaoui also testified that he served as Mr. Rabon's primary-care physician for a number of years, and thus was familiar with Mr. Rabon's medical history and physical condition. He testified that Mr. Rabon's reported neck pain and associated headaches were consistent with other patients he treated who complained of suffering neck trauma. Dr. Gennaoui testified that Mr. Rabon underwent a physical examination and diagnostic tests, including an MRI, the results of which were consistent with the verbal history Mr. Rabon provided to him during their appointment. Dr. Gennaoui's testimony indicates that he considered more than just the temporal relationship between the accident and the onset of Mr. Rabon's pain.

The Court cannot find that Dr. Gennaoui's methodology is invalid or unreliable or that his expert opinions are speculative, unsupported by sufficient facts, or contrary to the facts of the case. Defendants will have the opportunity to present Dr. Gennaoui's cross-examination deposition testimony, and to present their own expert testimony regarding causation. Accordingly, the Court finds that Defendants' motion should be denied to the extent that it seeks exclusion of Dr.

Gennaoui's causation opinions because they are premised on the correlation between the automobile accident and the onset of Mr. Rabon's complaints of pain.

**B. Opinions Not Stated to a Reasonable Degree of Medical Certainty**

Defendants argue that the Court should exclude any of Dr. Gennaoui's opinions that are not stated to a reasonable degree of medical certainty. Specifically, Defendants point to Dr. Gennaoui's deposition testimony "that it was merely 'possible,' but not probable, that a cervical disk that is already degenerated by some degree of arthritis could be damaged more easily than a disk that did not have any arthritis." (ECF No. 39). Defendants also point to Dr. Gennaoui declining to say whether the automobile accident caused Mr. Rabon to suffer pain and symptoms for which he ultimately underwent surgery.

Plaintiffs respond that they withdraw their designation of Dr. Gennaoui's deposition testimony regarding whether it is possible for an already degenerated disk to be damaged more easily than a disk that is not degenerated. In light of that fact, Plaintiffs conclude that the Court should deny the instant motion as moot to the extent that it seeks to exclude Dr. Gennaoui's opinions that are not stated to a reasonable degree of medical certainty. The Court agrees with Plaintiffs' conclusion, and denies Defendants' motion as moot to the extent that it seeks exclusion of Dr. Gennaoui's deposition testimony regarding whether degenerated disks are more easily damaged. However, this is not entirely dispositive of Defendants' argument. The instant motion also specifically references Dr. Gennaoui declining to say whether the need for surgery performed on Mr. Rabon's neck was caused by the automobile accident.

"To be admissible, an expert's opinion must represent his professional judgment as to the most likely or probable result." *Hogland v. Town & Country Grocer of Fredericktown Mo., Inc.*, No. 3:14-cv-0273-JTR, 2015 WL 3843674, at *7 (E.D. Ark. June 22, 2015) (citing *E-Ton*

5

*Dynamics Indus. Corp. v. Hall*, 83 Ark. App. 35, 39, 115 S.W.3d 816, 819 (2003)); *see also Jacuzzi Bros., Inc. v. Todd*, 316 Ark. 785, 791, 875 S.W.2d 67, 70 (1994). In his deposition, Dr. Gennaoui was asked whether the automobile accident caused Mr. Rabon to ultimately have to undergo surgery and he stated that, although the accident caused Mr. Rabon to suffer pain, he could not say whether it caused the need for surgery. Upon further questioning, Dr. Gennaoui testified that the surgery was performed in the area in which Mr. Rabon was experiencing pain. Dr. Gennaoui made no further connection between the accident and the surgery. The Court finds that this testimony is too speculative to be admissible expert testimony. Accordingly, Defendant's motion is granted to the extent that it seeks to exclude Dr. Gennaoui's testimony regarding whether the accident caused Mr. Rabon to suffer pain and symptoms for which he ultimately underwent surgery.

**C. Diagnosis of Myelomalacia**

Defendants argue that the Court should prohibit Dr. Gennaoui from testifying that another doctor diagnosed Mr. Rabon with myelomalacia, as this testimony would constitute inadmissible hearsay. Defendants argue that Dr. Gennaoui stopped treating Mr. Rabon's complaints of neck pain in February 2014, after he began treatment with an orthopedic surgeon, Dr. Andres Munk. However, in his deposition, Dr. Gennaoui was asked about his medical charting during a subsequent, unrelated appointment with Mr. Rabon, in which Dr. Gennaoui noted that Dr. Munk diagnosed Mr. Rabon with myelomalacia. Defendants argue that Dr. Gennaoui personally made no finding of myelomalacia, and simply repeated Dr. Munk's findings. Defendants conclude that Dr. Gennaoui cannot permissibly serve as a mere conduit for hearsay, and ask the Court to exclude his testimony on this subject.

Plaintiffs argues that after Mr. Rabon began treatment with Dr. Munk, Dr. Gennaoui continued to follow Mr. Rabon's progress. Plaintiffs state that Dr. Munk provided Dr. Gennaoui

with a radiographic impression of myelomalacia, which Dr. Gennaoui noted in his own patient chart for Mr. Rabon. Plaintiffs argue that Dr. Gennaoui may testify as to the matters reported to him by other medical providers and which are contained in his chart. Plaintiffs state that the diagnosis of myelomalacia supports the reasonableness of Dr. Gennaoui's testimony concerning the causal relationship between the accident and Mr. Rabon's symptoms of pain.

Federal Rule of Evidence 703 permits an expert to rely on otherwise inadmissible hearsay if experts in the field would reasonably rely on that kind of facts or data in forming an opinion. *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). "Where, however, an expert does not simply rely upon data or facts collected by another expert for use in forming an opinion, but instead, adopts wholesale the opinion of another expert, Rule 703 does not render the testimony admissible." *Sims v. State Farm Mut. Auto. Ins. Co.*, No. 4:13-cv-0371-JLH, 2016 WL 3511712, at *1 (E.D. Ark. Jan. 13, 2016); *see also Hill v. Fikes Truck Line, LLC*, No. 4:11-cv-816 CAS, 2012 WL 5258753, at *3 (E.D. Mo. Oct. 24, 2012). "To allow otherwise would deprive the opposing party of the opportunity to cross-examine the expert on the basis of the non-testifying expert's opinion." *Sims*, 2016 WL 3511712, at *1.

Dr. Gennoui testified that he stopped treating Mr. Rabon for neck and back pain when Mr. Rabon began treatment with Dr. Munk in February 2014. Dr. Gennoui testified further that he did not diagnose Mr. Rabon with myelomalacia, and that Dr. Gennoui's March 21, 2014 chart notes repeated what Dr. Munk and Mr. Rabon told him of the diagnosis. If the Court admits Dr. Gennoui's testimony related to myelomalacia, Dr. Gennoui would not be giving his own opinion formed using the facts and data gathered by Dr. Munk, but rather, Dr. Gennoui "would be no more than a conduit to introduce [Dr. Munk's] opinion into evidence." *Sims*, 2016 WL 3511712, at *2. Dr. Munk diagnosed Mr. Rabon with myelomalacia, and the best way to determine whether that

7

is true is for the jury to hear Dr. Munk's testimony on the subject. Accordingly, the Court finds that Defendants' motion should be granted to the extent that it seeks to exclude Dr. Gennoui's testimony regarding myelomalacia.

## II. CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion to Limit Testimony of Habib Gennaoui, M.D. (ECF No. 38) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs may offer Dr. Gennaoui's causation opinions, and Defendants are free to offer Dr. Gennaoui's cross-examination testimony, as well as present their own expert witness. Plaintiffs may not offer Dr. Gennaoui's testimony regarding whether the accident caused Mr. Rabon pain and symptoms for which he ultimately underwent surgery. Plaintiffs may not offer Dr. Gennaoui's deposition testimony relating to Dr. Munk diagnosing Mr. Rabon with myelomalacia.

**IT IS SO ORDERED**, this 11th day of September, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge